1

2 **UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
3 **PIKEVILLE DIVISION**

4

5 )
)
6 **STARLEN HATFIELD et al.,** )
) **Case No. 7:21cv55 REW**
7 **Plaintiffs,** )
) **Judge Robert Wier**
8 **vs.** )
) **U.S. Magistrate Judge Atkins**
9 **M&M IMPORTS, dba Walters** )
**TOYOTA NISSAN, et al.** )
10 ) **Memorandum in Opposition to**
**Defendants** ) **Defendant M&M, Inc. Dba Walters**
11 ) **Toyota Nissan's Motion to Dismiss**
) **and Compel Arbitration**
12 _____

13

14

15     Come now Plaintiffs, Starlen and Charlene Hatfield, by and through the

16 undersigned counsel, and oppose Defendant, M&M Imports dba Walters Toyota Nissan's

17 [hereinafter "Walters"] Motion to Dismiss and Compel Arbitration. Plaintiffs ask this

18 Court to deny Defendant's motion.

19                    **I-Facts and Introduction**

20     Defendant Walters Toyota Nissan sells new and used cars in and around the

21 Pikeville, Ky area. As part of its business it extends credit to car buyers through the use of

22 both a retail buyers order [RBO] and a retail installment sales contract [RISC] and then

23 assigns or sells the transaction to various financial entities such as Defendant Credit

24 Acceptance Company. In the instant case, the transaction at issue relates to the sale and

25 financing of a used 2012 Toyota Tacoma truck that Plaintiffs purchased from Defendant,

26 Walters on or about July 3, 2020. As part of this transaction, as is typical in such deals,

27 Plaintiffs were asked to sign multiple documents. Defendant CAC, alleged

28 in its moving papers, that Plaintiffs executed a Retail Installment Sales Contract

1

2   [hereinafter the "RISC"] through Walters containing a valid arbitration provision which

3   must be enforced. Defendant CAC claimed further to be a valid assignee of the same

4   RISC.  Defendant Walters, in its motion incorporates each every one of the arguments

5   made by CAC. However, Walters adds one additional argument which is mainly the basis

6   for its separate filing. Walters claims that, in addition to the Risc, its Retail Buyer's Order

7   which the Plaintiffs executed also contained an arbitration provision which must be

8   enforced. Unlike the RISC, Plaintiffs were actually given a copy of the Retail Buyer's

9   Order to take with them at the time of the sale. Other than this single fact, all facts

10  previously recited by Plaintiffs in its opposition to Defendant CAC's motion [Doc. 23]

11  are the same and, therefore, incorporated by Plaintiffs in this current opposition to

12  Defendant Walters' motion.

13                          II- **Law and Argument**

14          The Retail Buyer's Order (hereinafter "RBO") is Defendant Walters' exhibit "A"

15  presented in support of its motion [Doc. 28-1]. It contains an arbitration clause which

16  reads as follows:

17          The Buyer(s), by signing the retail buyers order, hereby agree and acknowledge,
            that any dispute arising between and among the parties of any nature whatsoever,
18          including, but not limited to, the validity of the contract, shall be submitted
            to binding arbitration and further that any dispute shall not be litigated in any
19          other forum. If the parties cannot agree on a person to serve as an arbitrator
            within (15) days of initial notification to any party of the dispute, then the parties
20          agree that the pike circuit court shall appoint an arbitrator upon motion by any
            party to preside over any arbitration. Any arbitration proceeding shall be
21          held in Pikeville, Ky. The parties further agree that any dispute shall be
            governed by the laws of the Commonwealth of Kentucky.

22
            Although it might be asserted that because Plaintiffs were given a copy of this
23
    document a stronger argument can be made for enforcing arbitration. That simply is not
24
    the case for several reasons as set forth hereinbelow:
25
            **A.  Once a party voluntarily and unconditionally assigns all its contract**
26          **rights to another that party loses its right to the assigned terms. M&M**
            **voluntarily and unconditionally assigned all of its contract rights with**
27          **Plaintiffs to CAC. M&M can't now enforce contractual rights**
            **it no longer has**.
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant Walters and Plaintiffs, in addition to entering into a contract for sale (RBO) on June 3, 2020, contemporaneously executed a Retail Installment Sales Contract [hereinafter the "RISC"][Doc. 15, Kelly Namel Decl. Exh 1 "A"]. The RISC was immediately assigned and/or sold to Defendant, CAC [Doc.15, Kelly Namel Decl. Exh 1, ¶2]. The RISC contains the following provision

ASSIGNMENT

FOR VALUE RECEIVED, Seller hereby assigns and transfers **all Seller's right, title and interest in and to this Contract**, **and in and to the Vehicle described herein**, to CREDIT ACCEPTANCE CORPORATION ("Assignee"), its successors and assigns, pursuant to and in accordance with the terms and conditions set forth in the existing dealer agreement between Seller and Assignee in effect on the date hereof. Seller gives Assignee full power, either in Assignee's name or in Seller's name, to take an actions which Seller could have taken under this Contract. In order to induce Assignee to accept assignment of this Contract, Seller represents and warrants to Assignee as set forth in the existing dealer agreement.

NOTICE OF ASSIGNMENT: The Seller has assigned this Contract to Credit Acceptance Corporation In accordance with the terms and conditions set forth on page 4 of this .Contract. **This assignment Is without recourse**. You must make all future payments to: CREDIT ACCEPTANCE CORPORATION, 25505 WEST TWELVE MILE ROAD-SUITE 3000, .SOUTHFIELD, MICHIGAN 48034-8339, 1-(800)-634-1506.

The term "assignment" is defined in Black's Law Dictionary as follows:

"An assignment is the act of transferring to another all or part of one's property, interest, or rights. It includes transfers of all kinds of property, including negotiable instruments. The assignment of an account involves the transfer to the assignee the right to have money, when collected, applied to the payment of his debt. Id. The interest in the property assigned can be present, future,or contingent; it may represent contract rights to money, property, or performance, or rights to causes of action. **Black's Law Dictionary 119 (6th ed. 1992)**.

"An assignment of a contract consists of three elements: (1) an assignor, (2) an assignee, and (3) transfer of control of the thing assigned from the assignor to the assignee. ***Leon v. Martinez,*** 84 N.Y.2d 83, 88, 614 N.Y.S.2d 972, 638 N.E.2d 511 (N.Y.1994); see also Restatement (Second) of Contracts §317(1) (1981) ("An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is **extinguished** in whole or in part and the assignee acquires a right to such performance.") **(emphasis added).**

1

2   The operative words here are "all Seller's right, title and interest in and to this

3   contract, and in the vehicle described herein". Through this assignment Plaintiffs contend

4   that Walters has forfeited any and all rights it may have in connection with this deal,

5   including its right to invoke arbitration**.** Defendant Walters may not compel arbitration

6   simply because an arbitration clause is in a contract. Walters has the burden of proving

7   that it is a party to the contract. Walters chose to assign its rights, including the right to

8   arbitrate, to Defendant CAC. It can't now demand rights that it no longer has.

9   The recently decided case of *Sanders vs. Savannah Highway Automotive Co*, 432

10   S.C. 328, 852 S.E.2d (2020) is the best application of the principle asserted herein by

11   Plaintiffs. In that case Sanders purchased a vehicle from Rick Hendrick Dodge. At the

12   time of the sale Mr. Sanders expressly informed the salesman that he was on short term

13   disability and had limited income. The salesman, in order to obtain approval from

14   Santander for it to purchase Plaintiff's RISC, inflated Sanders' income. The RISC was

15   then assigned by the car dealer to Santander. Litigation thereafter ensued involving

16   Sanders, Rich Hendrick and Santander. One of the issues was that the dealer had

17   previously advertised the vehicle for a price significantly lower than what Sanders

18   eventually paid as well as the false representation of Plaintiff's income to Santander. The

19   RISC contained an arbitration provision which the dealer attempted to invoke. The trial

20   court denied Defendant's motion to compel arbitration and it appealed. The Appellant

21   argued that the circuit court erred in finding its right to seek arbitration was extinguished

22   when Rick Hendrick Dodge assigned the RISC to Santander. The appellate court

23   affirmed.

24   "An assignment of a right is a manifestation of the assignor's intention to transfer it by
     virtue of which the assignor's right to performance by the obligor is extinguished in

25   whole or in part and the assignee acquires a right to such performance." 432 S.C. 333.

26   Quoting from *duPont de-Bie v. Vredenburgh*, 490 F.2d 1057, 1061

27   (4th Cir. 1974) at 432 the Court wrote:

28

[W]here a party assigns agreements that include an arbitration clause, the assignor's `right to compel arbitration under those agreements is extinguished.'"

The Court further cited and quoted from ***Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc.,*** 590 F.Supp.2d 677, 684-85 (D.N.J. 2008)

... a corollary to the principle that an assignee is bound by the arbitration clause in an assigned contract is that an assignment ordinarily extinguishes the right [of the assignor] to compel arbitration.

Quoting ***Kennamer v. Ford Motor Credit Co.***, 153 So.3d 752, 762-63 (Ala. 2014)

......because of a car dealership's assignment of a sales contract containing an arbitration clause to Ford Credit, Ford Credit could enforce the arbitration clause, but the dealership could not.

Finally, it concluded at 333:

Because Rick Hendrick Dodge assigned the RISC to Santander, we find all alleged rights arising from the contract, including the right to have an arbitrator determine the arbitrability of the action and the right to arbitrate, were extinguished as to Appellants.

B. **The signing of an agreement which may result in a waiver of certain constitutional and statutory rights must be knowing and voluntary. An arbitration provision which fails to inform or to explain to a consumer what Constitutional rights he or she are waiving is unenforceable**.

1. <u>**Right to Trial By Jury**</u>

Section 7 of the Kentucky Constitution speaks to Right of Trial By Jury: "The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by this Constitution". Text as Ratified on: August 3, 1891, and revised September 28, 1891. The 7th Amendment to the United States Constitution guarantees that right as well.

Walters arbitration provision provides as follows;

The Buyer(s), by signing the retail buyers order, hereby agree and acknowledge, that any dispute arising between and among the parties of any nature whatsoever, including, but not limited to, the validity of the contract, shall be submitted to binding arbitration and further that any dispute shall not be litigated in any other forum. If the parties cannot agree on a person to serve as an arbitrator within (15) days of initial notification to any party of the dispute, then the parties agree that the pike circuit court shall appoint an arbitrator upon motion by any

1
2

party to preside over any arbitration. Any arbitration proceeding shall be held in Pikeville, Ky. The parties further agree that any dispute shall be governed by the laws of the Commonwealth of Kentucky.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

The doctrine that waiver of Constitutional rights must be knowing and voluntary is not specifically aimed at arbitration clauses but is a generally applicable rule of law that treats arbitration clauses the same as it treats all other contractual provisions. "An arbitration provision may be voided for the same reasons for which any contract may be invalidated." *Fazio vs. Lehman Bros. Inc.*, 340 F.3d 386 (6th Cir. 2003) at 392. State law throughout this country generally provides that a party does not waive a Constitutional or statutory right unless the waiver is made knowingly and voluntarily. *Atalese vs. U.S. Legal Services Group Ltd Partnership*, 99 A.3d 306 (N.J. 2014) and *Hudson vs. BAH Shoney's Corporation,* 263 F.Supp.3d 661 (M.D. Tenn 2017). Courts universally rule that, in order to be enforceable an arbitration provision must be clear and unambiguous. "Ordinary state-law principles that govern the formation of contracts" should apply to any court's analysis as to whether to enforce an arbitration agreement. *First Options of Chicago, Inc. vs. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed. 2d 985 (1995), *Fuentes vs. Shevin*, 407 U.S. 67, 95, 92 S.Ct. 1983, 32 L.Ed 2nd 556 (1972) ("a waiver of Constitutional rights must, at the very least be clear") and *K.M.C vs. Irving Trust Company*, 757 F.2d, 752, 756 (6th Cir. 1985).

19
20
21
22
23
24

A Michigan federal court refused to compel arbitration in a wrongful death case on the basis that the patient had not knowingly waived her right to a jury trial when she was admitted at a nursing home facility because the arbitration provision did not mention that by agreeing to arbitration that she would be giving up her right to a trial by jury. *High vs. Capital Senior Living Properties*, 594 F.Supp. 2d 789 (E.D. Mich. 2008).

25
26
27
28

In the instant case Plaintiffs merely ask this Court to closely examine and consider how confusing an ambiguous the "Walters arbitration provision" is. As attorneys we can easily conclude that the Walters provision requires the Plaintiffs to waive their right to a jury trial. However, to the "least sophisticated" or "unsophisticated" consumer clearly not

1  so. "The law was not made for the protection of experts, but for the public-that vast

2  multitude which includes the ignorant, the unthinking and the credulous"[1]. ***Florence Mfg.***

3  ***Co. vs. J.C. Dowd &*** Co, 178 F. 73, 75 (2nd Cir. 1910). "To those who are trained and

4  experienced it does not change the character of a false statement nor does it take away its

5  power to deceive others less experienced." ***FTC vs. Standard Education Society***, 302

6  U.S. 112, 116, 58 S.Ct. 113,115, 82 L.Ed. 141 (1937).

7      The provision in the instant case doesn't contain or mention the word "jury" and,

8  therefore, could not have not expressly informed Plaintiffs that they were waiving this

9  right. Walters may argue, however, that absent the use of the word "jury", Plaintiffs

10  should still have been able to determine, by implication and through other language, that

11  they were waiving this right. But to the least sophisticated consumer who, at the time of

12  the execution is unrepresented by counsel, this is not the case. Plaintiff, Russell Hatfield,

13  did not complete 9th grade and was diagnosed with a learning disability while attending

14  school  [Pls' Decl. ¶5]. As previously declared by Plaintiffs, they were not allowed to

15  review any documents and there was no mention of arbitration at the time of the sale; let

16  alone, any explanation of it [Pls' Decl. ¶4].

17      In ***Walker vs. Ryan's Family Steakhouses, Inc***. 400 F.3d 370 (6th Cir. 2005) the

18  Court took into account, not only whether the arbitration agreement contained an "explicit

19  waiver" of a right to jury, but also the educational level of the employee and whether the

20  "circumstances under which the contract was presented made it unlikely he would realize

21  he was relinquishing such important rights."

22      Even in the unlikely event that Plaintiffs could understand that by agreeing to

23  arbitration they would be waiving a jury and the right to go to court, the provision

24  becomes confusing and ambiguous once again when it refers back to the 'pike circuit

25  court" if the parties are unable to agree on an arbitrator. The implication is that a court

26  could, once again, become involved in the matter.

27  ───────────────

28      [1]And the trusting.

- 7 -

1

2     ***Hudson vs. BAH Shoney's Corporation, surpa.*** is the best and closest illustration

3 of the application of the above stated principles as well as incorporating some of the

4 assertions of fact alleged in Plaintiffs' Declaration in which that Court concluded that

5 Plaintiff did not make a knowing and voluntary waiver of her right to a jury trial

6 provided for in an arbitration agreement. ***Hudson*** involved litigation brought by an

7 employee against a restaurant for employment discrimination alleging that her superior

8 sexually harassed her thereby creating a hostile work environment. Plaintiff brought

9 claims under Title VII of the Civil Rights Act, 42 U.S.C. §2000e, et seq. as well as claims

10 under state law. Defendant filed a motion to compel arbitration. The facts were that upon

11 accepting employment with the Defendant, Plaintiff was required to sign an agreement

12 which provided that all claims

13         "arising from or related to the employee's employment relationship with BAH,"
including—but not limited to—claims arising from allegations of discrimination

14         based on sex, sexual harassment, and retaliation for exercising legal rights, must be
resolved through arbitration."

15 Plaintiff's affidavit opposing Defendant's motion contained a number of assertions which

16 the Court believed to be relevant which are similar to those contained in Plaintiffs'

17 declaration. She claimed that she had to sign all the papers that day in order to keep her

18 job[2]; that she did not understand that she was giving up her right to go to court in case of

19 a dispute; that she was not given a lot of time to look over the documents she was signing;

20 that no one mentioned arbitration to her when she was signing; that she was just told to

21 sign the papers ("sign here, sign there"); no one told her orally that she was giving up her

22 right to go to court; and, that she did not even understandwhat the word "forum" meant.

23

24

25

26 ————————————

27     [2]The document at issue in the case at bar involves a preprinted form whereby, if Plaintiffs
wished to purchase a vehicle, she had no choice but to sign that form. Much like the Plaintiff in

28 Hudson who had to sign in order to keep her job.

1

2          The Court began its analysis by re-stating the basic principle that in order for a

3    party's waiver of the constitutional right to a jury trial to be be valid, it must be knowing

4    and voluntary. ***Hergenreder v. Bickford Senior Living Grp., LLC***, 656 F.3d 411, 420 (6th

5    Cir. 2011). Further, that it is "elementary that the Seventh Amendment right to a jury is

6    fundamental and that its protection can only be relinquished knowingly and

7    intentionally.... **Indeed, a presumption exists against its waiver."** (emphasis added).

8    ***Nat'l Equip. Rental, Ltd. v. Hendrix***, 565 F.2d 255, 258 (2d Cir. 1977).

9          In its analysis, the Court applied and cited the criteria enunciated in the Sixth

10   Circuit case of *Morrison vs. Circuit City Sores, Inc*., 317 F.3d 646,668 (6th Cir. 2003) (en

11   banc) as to whether there had been a knowing and voluntary waiver at pages 667-668:

12

13          In evaluating whether a plaintiff knowingly and voluntarily waived her right to pursue
            employment claims in court, the court considers: (1) plaintiff's experience, background
            and education; (2) the amount of time the plaintiff had to consider whether to sign the
14          waiver, including whether the employee had an opportunity to consult with a lawyer; (3)
            the clarity of the waiver; (4) consideration for the waiver; and (5) the totality of the
15          circumstances.

16   Each of these elements or criteria are discussed and cited by the Court in ***Hudson*** and are

17   present to a large degree in Plaintiffs' own declaration.

18          In closing, as to the meaning of the term "binding arbitration" used both in

19   ***Hudson*** and in the arbitration provision in the case at bar the Court significantly points

20   out as follows:

21          The term **"binding arbitration"** is not in any way defined or described
            in the Employee Acknowledgment, and the court finds it unrealistic
22          to expect a young person lacking a high school education to understand
            the full import of that term. The Employee Acknowledgment does
23          not pair usage of the term with an express identification of the types of
            legal claims that were implicated or with notice that consent to
24          binding arbitration necessarily entails waiver of the right to a
            jury trial in a court of law. Nor did the restaurant manager or
25          any other BAH employee explain to the plaintiff what arbitration
            means or even point out to her that, by signing the Employee
26          Acknowledgment, she was agreeing to arbitrate.

27

28

1

2

3

      C. The print size of the arbitration provision in Walter's Retail Buyers Order fails to comply with Kentucky statutes and, therefore, is unenforceable.

4

      By way of background, Plaintiffs' exh "A" is Walters blank preprinted retail

5

buyers order form (RBO) obtained through informal discovery from Walters' counsel. It

6

is attached hereto in its original size as an 8 ½ by 14" size document. Its size is contrasted

7

with the same 8 ½ by 11" [Def's exh. "A"] attached by Defendant to its motion to

8

compel. According to counsel during the execution of the sale and financing documents

9

with the Plaintiffs and others its computer generates this document in 8 ½ by 14" format

10

for the customer to review and to sign. However, when it becomes time to provide a copy

11

to the Plaintiffs and others, inexplicably instead of generating an additional copy from its

12

computer, it uses a photocopy machine to copy the original which reduces the document

13

from 8 ½ x 14" to 8 ½ by 11" in size. This has the effect of reducing the type size even

14

smaller. Therefore, in determining the true print size of the document's arbitration

15

provision, it was necessary to obtain the 8 ½ by 14" version of the document. Per the

16

declaration of attorney Steven Shane this was accomplished with the result being that the

17

size of the print of the arbitration provision in Defendant Walters retail buyers order being

18

6 point. This fact can't and is not likely to be contested by Defendant Walters.

19

20

      1. The arbitration provision found in the Retail Buyers Order is invalid because it fails to comply with K.R.S §190.100, a provision of the Kentucky Vehicle Retail Installment Sales Act which requires that :

21

22

Requisites of retail installment contract

23

(1) (a) Every retail installment contract shall:
        1. Be in writing in at least eight (8) point type;"

24

25

      Plaintiffs' purchase of an automobile from Walters was a "retail installment sales transaction" as it is defined in K.R.S.§190.090(3):

26

27

28

"(3) "Retail installment contract" means *any agreement*, entered into in this state, *evidencing a retail installment sale of a motor vehicle*, other than for the purpose of resale, pursuant to which title to, or a lien upon the motor vehicle is retained by the retail seller as security for the retail buyer's obligation. This term includes a mortgage, *conditional sale contract* or any contract for the bailment or leasing of a motor vehicle by which the bailee or lessee contracts to pay as compensation for its use a sum substantially equivalent to the time sale price of the motor vehicle and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming for no additional consideration or for nominal additional consideration, the owner of such motor vehicle;."

While it might be argued that Walters retail buyers order is not a retail installment sales contract such as the one assigned to CAC, note that, just as the accompanying RISC, it similarly provides for a time price differential as one might find in any conditional sales contract or RISC in which it discloses that there are 48 monthly payments of $426.38 at an APR of 22.99% and other similar credit disclosure terms. It is plain that the arbitration clause contained in the Retail Buyers Order does not meet the required 8 point type size and the provision is therefore unenforceable.

Conclusion

For all the reasons set forth herein above, Plaintiffs request that Defendant Walters' Motion be denied and that the matter proceed directly on the Court's regular docket in the usual manner.

Respectfully submitted by:

*/s/Steven C. Shane*
Steven C. Shane (0041124
Shane Law Office
Trial Attorney for Plaintiff
P.O. Box 73067
Bellevue, Ky 41073
(859) 431-7800
(859) 431-3100 direct dial
shanelaw@fuse.net

- 11 -

1

2        and

3

4        ***/s/Bruce K. Gilster***
        Bruce K. Gilster (KBA #82399)

5        19 East Court St.
        Unit 414

6        Cincinnati, Ohio 45202
        (513) 784-1110

7        gilsterlaw@hotmail.com

8

9      **CERTIFICATE OF SERVICE**

10    I  certify that the foregoing document is being served this day on all counsel
of record or pro se parties identified on the attached Service List in the manner

11 specified, either via transmission of Notices of Electronic Filing generated by
CM/ECF or in some other authorized manner for those counsel or parties who are

12 not authorized to receive electronically Notices of Electronic Filing.

13

14        ***/s/Steven C. Shane***
        Steven C. Shane

15

16

17

18

19

20

21

22

23

24

25

26

27

28