UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| STARLEN RUSSELL HATFIELD and<br>CHARLENE HATFIELD, | ) | |
| | ) | |
| | ) | No. 7:21-CV-055-REW-EBA |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | OPINION and ORDER |
| | ) | |
| M&M IMPORTS, INC., d/b/a/ | ) | |
| WALTERS TOYOTA NISSAN, and | ) | |
| CREDIT ACCEPTANCE CORP., | ) | |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

Plaintiffs Starlen Russell Hatfield and Charlene Hatfield sued Credit Acceptance Corporation ("CAC") and M&M Imports, Inc. (d/b/a Walters Toyota Nissan, "Walters") based on claims arising from a car sale that occurred on or around July 3, 2020. *See* DE 1. Upon service, CAC moved to dismiss the action for improper venue and compel arbitration consistent with the Retail Installment Contract ("RIC") the Hatfields signed during the transaction. DE 15. The Hatfields responded. DE 23. CAC replied. DE 27.

Then, Walters filed a like motion. It included itself in the CAC endeavor and separately sought to enforce arbitration under the arbitration clause of its retail buyers order with the Hatfields. *See* DE 28. That, too, is briefed. *See* DE 32; DE 34.

Given the clear pro-arbitration standards, the clarity of the record, the scope and validity of the clauses, and the absence of any cognizable dispute in this Court that would curtail the arbitral process, the Court **GRANTS** both dismissal motions, without prejudice, and **DIRECTS** the parties to pursue binding arbitration.

1

## I.    Facts[1]

On or around July 3, 2020, the Hatfields needed a car. DE 1. They called Walters, learned about an available 2012 Toyota Tacoma truck, and travelled to Walters in Pikeville, Kentucky. After a test-drive, they decided to purchase that vehicle, as-is, on credit. *Id.* The Hatfields agreed to the price and agreed for Walters to finance the sale consistent with a RIC lasting forty-eight months. *Id.* at 4. To protect themselves, the Hatfields bought a third-party extended warranty as part of the deal. *See id.*

A Walters finance representative had escorted the Hatfields into a room to review the paperwork. *Id.* The Walters representative presented the Hatfields with multiple documents for their signatures—including the RIC, a "retail buyers contract," and a "due bill." *Id.* The Hatfields signed the paperwork and claim to have retained only the "retail buyers order" and "due bill." *Id.* Walters immediately assigned or sold the signed RIC to CAC. *Id.*

Troubles quickly plagued the truck, leading the Hatfields to return to Walters seeking maintenance or repair. *See id.* at 4-5. Evidently, the Hatfields failed to pay even the first installment under the RIC, and CAC promptly repossessed the truck from the Walters lot on some date in or around August of 2020. *See id.* at 5. The Hatfields eventually sued CAC and Walters based on the July 3, 2020 transaction, and ensuing collections, under various Kentucky tort and statutory claims and the Truth-in-Lending Act. *Id.* at 6-11; *see generally* 15 U.S.C. § 1601; K.R.S. § 367.170. CAC moved to dismiss, seeking to enforce the RIC arbitration provision. DE 15. Walters has sought the

---

[1] The stated posture is under Rule 12, but each side has put into the record significant materials far beyond the pleadings. Typically, arbitration enforcement proceeds under a Rule 56-type rubric. *See Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *Arnold v. Rent-A-Center, Inc.*, No. 11-18-JBC, 2011 WL 1810145, at *2 (E.D. Ky. May 12, 2011). The Court essentially queries for any genuine dispute of fact that would preclude summary enforcement of the arbitral scheme. *Simons*, 288 F.3d at 889. That, especially given the additional documents in the record, is the approach here.

same relief, adding a like claim under the retail buyers order. DE 38. Plaintiffs endeavor to avoid the effect of each clause, under various theories. *See* DE 23; DE 32. Ultimately, the Court finds the RIC clause enforceable as to CAC and the buyers order clause enforceable as to Walters. As such, the Court dismisses the case, without prejudice, and directs the parties to arbitrate.

## II.     Discussion

The Federal Arbitration Act (FAA) allows parties to commercial contracts to substitute an arbitrator for a court to resolve their disputes. 9 U.S.C. § 2. Under the FAA, these written agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* Arbitration is, therefore, a simple matter of contract whereby a party must submit to arbitration disputes that it has agreed to arbitrate. *See AT & T Techs. v. Commc'ns. Workers of Am.*, 106 S. Ct. 1415, 1418 (1986). In this way, the FAA manifests "a liberal federal policy favoring arbitration" and facilitates "efficient, streamlined procedures tailored to the type of dispute" covered by an arbitration agreement. *AT & T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1742, 1749 (2011).

A party to a written arbitration contract may petition the district court for an order directing the parties to arbitrate a dispute consistent with the terms of their arbitration agreement. 9 U.S.C. § 4. In reviewing that petition, the reviewing court must "determine whether the parties agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 712 (6th Cir. 2000). Courts must construe contractual ambiguities in favor of arbitration. *Id.* And courts should treat the facts alleged in motions to compel arbitration similar to motions for summary judgement – construing the facts and reasonable inferences in the light most favorable to the non-movant. *See Simons*, 288 F.3d at 889. The question is whether there is a reasonable factual dispute on the issue of arbitration-clause validity.

**a. Should the Court or an arbitrator determine arbitrability?**

Before considering the underlying arbitration agreement and its scope, the Court must determine whether the parties relegated the threshold arbitrability question to an arbitrator. Under the FAA, such an agreement is proper. *See Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010). "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

Here, the Hatfields concede that they signed a contract (the RIC) that included an arbitration clause. *See* DE 23. And the arbitration clause did not refer the threshold arbitrability questions to an arbitrator. *See* DE 23-1. Rather, the arbitration clause specifically carved-out the initial arbitrability questions "about the validity, enforceability, coverage or scope of this Arbitration Clause . . . for a court and not an arbitrator to decide." DE 23-1 at Ex. D. Thus, the Court is the correct venue to determine arbitrability under the RIC.

The buyers order is a closer call. The Hatfields agree they signed the order. *See* DE 32 at 1. The order includes within its arbitration scope "any dispute . . . of any nature whatsoever, including . . . the validity of the contract[.]" DE 23-1, Ex. B. The parties do not argue this scope question in any detail. The Court doubts that the language of the clause carries the delegation clause clarity required by the Supreme Court. *See Danley v. Encore Cap. Grp., Inc.*, 680 F. App'x 394, 398–99 (6th Cir. 2017) (discussing Supreme Court requirement that parties "clearly and unmistakably" delegate gateway issues to arbitrator). As such, the Court will assess arbitrability under the buyers order as well.

**b. Is the parties' dispute arbitrable?**

The Court's arbitrability analysis follows two steps. First, the Court must determine whether the parties agreed to arbitrate. *Stout*, 228 F.3d at 714. The Court applies state contract law to determine the formation of an arbitration agreement. *See Doctor's Assocs. v. Casarotto*, 116 S. Ct. 1652, 1654 (1996). If the Court finds that the parties agreed to arbitrate, the Court then considers the non-movant's "generally applicable state-law contract defenses," if any, that challenge the agreement's validity. *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004).

If the Court finds that the parties agreed to arbitrate and that none of the non-movant's contract-formation defenses prevail, the Court must then consider whether the dispute falls within the substantive scope of the arbitration agreement. *See Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing *Commc'ns Workers of Am.*, 106 S. Ct. at 1419). And when an arbitration agreement is broad, the non-movant must demonstrate that the specific dispute is expressly excluded from the arbitration agreement to avoid arbitration. *See Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983). The Court will compel arbitration only if it finds for the movant at both steps.

1. **Did the parties execute an arbitration agreement that is enforceable?**

In evaluating the validity of an arbitration agreement, the Court analyzes only the arbitration clause itself; arguments concerning the validity of the contract as a whole are inapposite at this stage. *Simons*, 288 F.3d at 889. The Court evaluates arbitration agreement validity through the lens of standard state contract law.[2] *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003); 9 U.S.C. § 2. But state law is preempted when it obstructs accomplishing the

---

[2] This case involves interstate commerce (*e.g.,* the Hatfields are West Virginians and travelled to Kentucky to buy the automobile) and, therefore, the FAA applies. Neither party contests that Kentucky state law governs substantive contract formation and interpretation. Accordingly, the Court applies Kentucky state law to determine the validity of the arbitration agreement. *See Volt Info. Sci., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 109 S. Ct. 1248, 1254-55 (1989).

Federal Arbitration Act's full purposes and objectives. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019). The Court will resolve ambiguities, as to contract scope and arbitration defenses, in favor or arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 103 S. Ct. 927, 941 (1983).

"It is the settled law in Kentucky that one who signs a contract is presumed to know its contents, and that if he has an opportunity to read the contract which he signs he is bound by its provisions." *Hathaway v. Eckerle*, 336 S.W.3d 83, 89-90 (Ky. 2011) (quoting *Clark v. Brewer*, 329 S.W.2d 384, 387 (Ky. 1959)). Correlatively, a person is presumed to know those things that reasonable diligence on his part would bring to his attention. *See LP Louisville E., LLC v. Patton*, 621 S.W.3d 386, 401 (Ky. 2020).

Here, the Hatfields do not dispute that they signed the RIC. DE 1 ¶ 9. In fact, the Hatfields included with their Response a copy of the RIC bearing their signatures and the relevant arbitration provision. DE 23-1 at Ex. D. The arbitration provision stated that the Hatfields could reject arbitration by mailing their rejection to CAC within thirty days. *Id.* Here, after consulting counsel, the Hatfields mailed their rejection letter on September 23, 2020—fifty or more days after the rejection period ended. DE 23-1 at Ex. C-2.

The Hatfields claim that they effectively revoked the arbitration agreement because they rejected the agreement through the September 23, 2020, letter. DE 23 at 5-7. The rejection was facially tardy; a reality the Plaintiffs try to avoid by contesting document custody. *Id.* The argument goes: because the Hatfields did not receive a hard copy of the RIC upon leaving Walters on the day of the deal, they are free from the 30-day mail-in requirements for revoking the arbitration provision. *Id.* The Hatfields provide no caselaw to support this novel argument. The record shows that the Hatfields signed a document stipulating to receipt. They acknowledge realizing they had

no copy of the RIC *immediately* upon exiting the room—yet they took no steps to secure a copy until well after the revocation period lapsed. With the document before them on the contract date, and full opportunity to read and digest its terms, the Hatfields stretch, without authority, for some type of tolling based on the alleged absence of a retained customer copy.

Ultimately, the closest decipherable legal theory on which the Hatfields might challenge the RIC arbitration agreement is procedural unconscionability.[3] Procedural unconscionability concerns the process employed to form an agreement. *See Schnuerle v. Insight Commc'ns*, Co. L.P., 376 S.W.3d 561, 576-77 (Ky. 2012). This includes deceptive practices such as fine, inconspicuous print, and convoluted language that conceals contractual terms; bargaining power also matters. *See id.* at 576-77. Plaintiffs make no argument under these standards.

True enough, the RIC states, "You are entitled to an exact copy of the Contract You sign." DE 23-1, at Ex. D. But, in the next sentence, the RIC states, just over the buyer signatures, that the Hatfields "acknowledge that You have received a copy of this Contract with all blanks filled in and that You have read it and understand it." *Id.* Again, the Hatfields do not contest their signatures or deny signing the contract. Thus, consistent with Kentucky law, the Hatfields' "lack of knowledge of the contents of a written contract . . . cannot serve as a legal basis for voiding its provisions." *Midwest Mut. Ins. Co. v. Wireman*, 54 S.W.3d 177, 182 (Ky. App. 2001). Courts have enforced arbitration provisions where parties similarly challenged the mechanics underlying their contractual agreements. *See Rivera v. UHS of Delaware, Inc.*, No. EDCV 15-863 JGB (DTBx), 2015 WL 13685336, at *6 (C.D. Cal. Nov. 30, 2015) (finding that, even though the plaintiff

---

[3] The Hatfields' Response does not allege substantive unconscionability as a basis for invalidating the arbitration provision. The Court does not take that detour on its own. *See, e.g.*, *Curtis Green & Clay Green, Inc. v. Frazier*, No. 2020-CA-0781-MR, 2021 WL 2878360, at *1 (Ky. Ct. App. July 9, 2021) (rubric).

contended that she did not receive the agreement, the arbitration provision applied because she signed the contract and did not opt out of the arbitration clause within the thirty-day rejection period), *aff'd*, 705 F. App'x 593 (9th Cir. 2017); *see also Perry v. Kelty*, No. 2011-CA-000160-MR, 2012 WL 1556311, at *1 (Ky. Ct. App. May 4, 2012) (enforcing an arbitration provision in an insurance policy even though the purchaser did not receive a copy of the full insurance policy because the "the lack of knowledge of the contents of a written contract . . . cannot serve as a legal basis for voiding its provisions").

Given this analysis, the Court simply finds no legal basis for validating the Hatfields' untimely revocation effort. They had full access to the deal terms and voluntarily signed. Whether they did or did not walk out with a copy (and they knew their status at the time) the clock began to run on revocation from the date of the deal—that is inarguably the effect of the language the Hatfields' agreed to be bound by. The RIC arbitration provision is in force.

As to the buyers order clause, and the status of Walters, the Court notes several things.

First, Walters weakly tries to fit within CAC's motion, but Plaintiffs present law indicating that Walters's assignment of the RIC impacts its standing to enforce arbitration under that contract. This may be so. *See Cameron v. Hess Corp.*, 974 F. Supp. 2d 1042, 1044 (S.D. Ohio 2013); *HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys.*, 590 F. Supp. 2d 677, 685 (D.N.J. 2008); *In re Wholesale Grocery Products Antitrust Litigation*, 97 F.Supp.3d 1101, 1106 (D. Minn. 2015), *aff'd*, 850 F.3d 344 (8th Cir. 2017); *see generally* Restat. 2d of Contracts, § 317. Walters does not contest the argument, so the Court does not run it to ground.

As with the RIC, the Hatfields admit signing the buyers order, and they also concede to having a copy of that agreement at all times. DE 32 at 2. In an effort to avoid the arbitration component, the Hatfields raise two theories, neither of which succeeds.

8

Plaintiffs first contend that the clause does not expressly mention a jury-trial waiver, creating a vulnerability to enforcement under Kentucky law. The Court disagrees. First, it is plain that the FAA requires no such express language:

> This Court, however, has flatly rejected the claim that an arbitration agreement must contain a provision expressly waiving the employee's right to a jury trial. Without discussion, we stated, "As to the failure of the arbitration clause to include a jury waiver provision, 'the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate.'"

*Cooper*, 367 F.3d at 506 (citing and quoting *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 492 (6th Cir. 2001) and *Sydnor v. Conseco Fin. Servicing Corp.*, 252 S.W.3d 302, 307 (4th Cir. 2001)); *see also Dutschke v. Jim Russell Realtors, Inc.*, 281 S.W.3d 817, 823 (Ky. Ct. App. 2008) (rejecting categorical rule under Kentucky Constitution). Indeed, *Hathaway* validated, against a state jury-right argument, an arbitration clause with no explicit reference to the forgone right to a jury determination. *See Hathaway*, 336 S.W.3d at 89-90.

Further, Plaintiffs had already entered the RIC arbitration clause. Although Walters might have assigned its rights there, the fact of execution and RIC content undoubtedly communicated to the Hatfields that arbitration would compromise any chance at jury determination. Both clauses, similarly broad in scope, arose in the same deal. The Hatfields cannot reasonably contend that they thought an arbitration clause would preserve or not forfeit a jury right in litigation. This argument fails.

Next, Plaintiffs claim the font size in the buyers order renders the arbitration clause invalid. DE 32 at 10-11. The Hatfields try to engraft Kentucky statutory requirements for "retail installment contracts" under KRS Chapter 190. *See id.* As the defense persuasively argues, the suite of documents here were not all of a piece. *See* DE 34 at 8-11. Thus, there indeed is a retail installment contract (the RIC) that memorializes all deal terms, in keeping with KRS § 190.100 and .090.

However, the buyers order does not purport to capture all terms; it omits, for instance, the retained lien component, a critical element of the definition of a "retail installment contract." *See* KRS § 190.090(3). Although the Hatfields do not point to authority explaining the effect of any font-default, the requirement, though applicable to the RIC, does not apply to the buyers order under the terms of the statute. Plaintiffs do not grapple with this gap. Further, the Court again must note that the Hatfields individually initialed the arbitration provision in the buyers order. DE 23-1 at Ex. D. The Court sees no hindrance to enforcement of the clause between Walters and the Hatfields.

## 2. Is the parties' dispute within the arbitration agreement's scope?

The Court must next determine whether the parties' disputes fall within the scope of the arbitration agreements. If so, the Court will dismiss and send the case to arbitration.

To determine whether a claim is within the scope of an arbitration agreement, the Court looks to the agreement's language. *See, e.g.*, *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004). When the arbitration provision is broad, the non-movant must demonstrate that the controversy is expressly excluded from arbitration or present "forceful evidence" that the present dispute was intended to be removed from arbitration. *See id.*

Here, the Hatfields concede that the RIC scope envelopes the full CAC dispute. DE 23, at 3. The arbitration clause is capacious and binds the parties to arbitrate all "disputes," interpreted broadly, to include "contract claims, and claims based on tort, violations of laws; statutes, ordinances or regulations or any other legal or equitable theories." DE 23-1 Ex. D. The clause expressly excludes only two claims from arbitration: actions brought in small claims court and repossession claims that do not demand monetary relief. DE 23-1 Ex. D. Neither exemption applies here; this case did not arise from an initial small claims court action, nor have the Hatfields

foregone monetary relief. *See* DE 1 at 11. Rather, the Hatfields sued CAC based on numerous statutory and tort causes of action arising from the July 3, 2020, transaction. *See id.* at 6-11. This dispute, therefore, falls within the arbitration agreement's scope.

The buyers order language, though less detailed, is of like breadth. The language agrees to arbitration of "any dispute arising between/among the parties of any nature whatsoever[.]" DE 23-1 at Ex. B. Surely, this provision covers the claims against Walters, all of which the Hatfields described as arising "in connection with . . . the sale and financing of a used motor vehicle." DE 1 ¶ 1; *id.* ¶ 2 (describing all claims as part of same case or controversy). Plaintiffs sue Walters under TILA (Count 1), the Kentucky Consumer Protection Act (Count 4), and common law unlawful repossession (Count 2). *Id.* at 6-8, 10-11. All claims are disputes arising between/among the parties and thus fall within the broad arbitration clause sphere.

Because both clauses apply and are enforceable, the Court **GRANTS** both motions. In lieu of staying the case, the Court dismisses given the preclusive reach of the clauses, which blanket all claims.[4] Of course, the dismissal is one without prejudice. The Court does not reach a merits decision here; that is for the arbitrator(s).

### III.   Conclusion

For these reasons, the Court **GRANTS** DE 15 and DE 28.

This the 15th day of December, 2021.

---

[4] Courts in the Sixth Circuit will dismiss a case without prejudice pending arbitration when all of the underlying claims should be submitted for arbitration. *See Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *see also Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 960 (N.D. Ohio 2009) (ordering dismissal without prejudice).

Signed By:

_Robert E. Wier_

**United States District Judge**